IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,         :
                                  :
        Plaintiff,                :
                                  :
    v.                            :  Civil Action No. 07-42-JJF
                                  :
THOMAS L. DAVIS, Jr.,             :
                                  :
        Defendant.                :
                                  :

Colm F. Connolly, United States Attorney, and Shawn E. Martyniak, Esquire, Assistant United States Attorney, of the OFFICE OF THE UNITED STATES ATTORNEY, Wilmington, Delaware.

Attorney for Plaintiff.

Eleni Kousoulis, Esquire, Assistant Federal Public Defender of the FEDERAL PUBLIC DEFENDER'S OFFICE, Wilmington, Delaware.

Attorney for Defendant.

**MEMORANDUM OPINION**

September 14, 2007
Wilmington, Delaware

**Farnan, District Judge.**

Pending before the Court is a Pre-trial Motion To Suppress Evidence And Statements (D.I. 14) filed by Defendant, Thomas L. Davis, Jr. For the reasons discussed, Mr. Davis's Motion will be denied to the extent that it seeks the suppression of evidence and denied as moot to the extent that it seeks the suppression of statements made by Mr. Davis.

I.  **BACKGROUND**

On March 27, 2007, Defendant, Thomas L. Davis, Jr., was indicted on one count of being a felon in possession of a loaded firearm in violation of 18 U.S.C. §§ 922(g)(1) and 942(a)(2). On July 6, 2007, Mr. Davis filed the instant Pre-trial Motion To Suppress in connection with what he contends was an illegal stop and seizure on March 21, 2007. The Court conducted an evidentiary hearing on August 1, 2007.

By his Motion, Mr. Davis contends that the police lacked probable cause and/or reasonable suspicion to justify the stop and seizure of Mr. Davis. As a result, Mr. Davis moves to suppress the evidence seized after the stop, as well as any statements he made during and/or subsequent to the stop.

The Government has filed a response to Mr. Davis's Motion contending that the police properly confiscated the physical evidence because it was abandoned by Mr. Davis during a foot chase with the police. The Government further contends that Mr.

Davis was not seized within the meaning of <u>California v. Hodari D.</u>, 499 U.S. 621, 626-627 (1991), at the time he abandoned the property. The Government has also determined that it will not use Mr. Davis's statements in its case-in-chief, and therefore, Mr. Davis has chosen to proceed with his Motion only insofar as it pertains to the use of the physical evidence seized by the police.

## II. FINDINGS OF FACT

1. On March 21, 2007, at about 6:30 p.m., Wilmington Police Officers Burton and Simons responded to the Southbridge area of the City of Wilmington at the intersection of A and Townsend Streets in connection with a radio call concerning an anonymous complaint about an individual armed with a handgun. (Tr. 9-10.) The radio call included a description of the individual. Specifically, the armed man was described as a short, black male wearing a black jacket, blue jeans and a knit cap. (Tr. 19.)

2. The officers were in full uniform and riding in a black and white, marked patrol car. (Tr. 8-9.)

3. The area to which the officers responded is a high crime area involving numerous complaints of drug sales and illegal weapons. (Tr. 11.)

4. When the officers approached the intersection, they observed a group of four or five individuals, two of whom began

leaving the group on bicycles. (Tr. 12-13, 20.)

5. The officers approached the subjects on the bikes, asked them what they were doing and patted them down. (Tr. 12, 20.)

6. While engaged in conversation with these subjects, Officer Burton looked up the street and made eye contact with Mr. Davis, who was standing on the corner about half a block away. Officer Burton recognized that Mr. Davis matched the description of the man identified in the radio call, and as soon as Mr. Davis made eye contact with Officer Burton, he began to run away from the group. (Tr. 14, 21.) Mr. Davis was not threatened by Officer Burton, and Officer Burton made no overt action toward him when he began to flee. (Tr. 21-22.)

7. Officer Burton chased after Mr. Davis and ordered him to stop several times. (Tr. 22.) Mr. Davis did not respond and continued to run.

8. Officer Burton came within ten feet of Mr. Davis and observed him reaching toward the front of his pants. (Tr. 22-23.) Officer Burton then observed Mr. Davis pull out a handgun and throw it against a brick wall. (Tr. 15, 18-19.) Officer Burton continued to chase Mr. Davis, and Mr. Davis fell to the ground shortly after discarding the weapon.

9. Officer Burton then placed Mr. Davis into custody and retrieved the handgun, which was a silver Bryco .380 automatic

3

handgun loaded with six rounds. (Tr. 16-17.)

**III. CONCLUSIONS OF LAW**

10. The Fourth Amendment to the United States Constitution protects "the right of the people to be secure against unreasonable searches and seizures. . . ." U.S. Const, amend IV.

11. Police are vested with the constitutional authority to conduct a limited, warrantless, investigatory stop in a public place if an officer has a reasonable suspicion of criminal activity. Terry v. Ohio, 392 U.S. 1, 88 (1968). During a Terry stop, the temporary detention of individuals constitutes a "seizure" within the meaning of the Fourth Amendment. Whren v. United States, 517 U.S. 806, 809 (1996).

12. Reasonable suspicion to initiate a Terry stop requires that "the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417-18 (1981). While Fourth Amendment jurisprudence demands particularized suspicion, courts also recognize that officers must be allowed "to draw on their experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." United States v. Arvizu, 534 U.S. 266, 273 (2002). Reasonable suspicion is to be viewed from the vantage point of a "reasonable, trained officer standing in [the

detaining officer's] shoes." Johnson v. Campbell, 332 F.3d 199, 206 (3d Cir. 2003). Whether the police have reasonable suspicion is determined from the totality of the circumstances. Cortez, 449 U.S. at 417.

    13. In this case, the Court concludes that Officer Burton had reasonable suspicion to initiate an investigatory Terry stop of Mr. Davis.[1] Officer Burton recognized that Mr. Davis met the description of the armed individual identified in the radio call, Mr. Davis was in a high crime area, and Mr. Davis fled upon making eye contact with the officer, even though the officer had

---

[1] The Court addresses the legality of Officer Burton's attempts to execute a Terry stop and the eventual stop and arrest of Mr. Davis, because Mr. Davis challenges those actions. However, the Court's holding need not rest on these grounds. As the Third Circuit has recognized, the Fourth Amendment does not become relevant until the moment of seizure, and it is at that time that the presence or absence of reasonable suspicion must be evaluated. United States v. Brown, 448 F.3d 239, 245 (3d Cir. 2006). This is consistent with the Supreme Court's acknowledgment that "attempted seizures of a person are beyond the scope of the Fourth Amendment." County of Sacramento v. Lewis, 523 U.S. 833, 845 n. 7 (1998). In this case, Mr. Davis was not subjected to the application of any physical force, and he did not yield to the officer's show of authority through the officer's demands that Mr. Davis stop. Thus, the Court concludes that Mr. Davis was not seized at the time he abandoned the handgun, and therefore, the handgun was lawfully seized by the police as abandoned property, regardless of the legality of Officer Burton's initial attempts to make a Terry stop. Government of Virgin Islands v. Olinsky, 119 Fed. Appx. 405 (3d Cir. 2005) (holding that Terry analysis did not apply when suspect took gun out of jacket and placed it in plain view before seizure and in contravention of officer's order to "freeze," but discussing reasonable suspicion for stop under Terry in the alternative).

not yet made any outward movements toward him.[2] <u>Illinois v. Wardlow</u>, 528 U.S. 119, 124 (2000) ("Headlong flight-wherever it occurs-is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."); <u>United States v. Valentine</u>, 232 F.3d 350, 357 (3d Cir. 2000) (concluding that officers had reasonable suspicion to stop suspects where they received a face-to-face tip of illegal activity, were in a high crime area and the suspect began to walk away when the police approached).

    14.  In the course of trying to execute a lawful <u>Terry</u> stop through his demands that Mr. Davis stop, Mr. Davis continued to flee and Officer Burton observed him reaching toward the front of his pants and throwing away a handgun that had been concealed apparently on Mr. Davis's person. These observations provided further reasonable suspicion for Officer Burton to complete the <u>Terry</u> stop he had attempted to initiate when Mr. Davis fled[3], and ultimately provided Officer Burton with probable cause to believe that Mr. Davis's had committed weapons offenses. Thus, the Court

---

    [2]    While the Court acknowledges that the tip in <u>Valentine</u> was a face-to-face tip, the Court concludes that this factor does not diminish the presence of reasonable suspicion here in light of the other factors noted above such as Mr. Davis's presence in a high-crime area, his unprovoked flight, and Officer Burton's observations during the foot chase.

    [3]    <u>See</u> <u>United States v. Brown</u>, 463 F.3d 115, 123 (2d Cir. 2006) (holding that even if the initial stop order was unreasonable, reasonable suspicion may be founded upon events occurring after the stop order was given).

further concludes that the ultimate stop and subsequent arrest of Mr. Davis was supported by reasonable suspicion and probable cause.

15. The Court also concludes that Officer Burton lawfully seized the handgun discarded by Mr. Davis while he was fleeing. Mr. Davis had not yet been physically seized, see infra n.1, and was not in custody at the time he abandoned the gun. Hodari, 499 U.S. at 626 (holding that a person is not seized when he refuses to submit to an officer's request that he stop and cocaine abandoned during chase could be lawfully seized). A person relinquishes any reasonable expectation of privacy in abandoned property such that the Government's appropriation of abandoned property is not unlawful. Abel v. United States, 362 U.S. 217 241 (1960).

16. Accordingly, the Court concludes that reasonable suspicion supported Officer Burton's attempts to conduct a Terry stop of Mr. Davis, as well as the ultimate stop and arrest of Mr. Davis. The Court further concludes that the handgun abandoned by Mr. Davis was lawfully seized.

**IV.  CONCLUSION**

For the reasons discussed, the Court will deny Mr. Davis's Pre-trial Motion To Suppress.

An appropriate Order will be entered.